PATRICK SHEA *vs.* GLENDALE ELASTIC FABRICS COMPANY.

Hampden.   September 26, 1894. — December 4, 1894.

Present: ALLEN, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Evidence — Remoteness — Other like Facts.*

On the question whether the illness of the plaintiff was caused by lead poisoning from inhaling dust containing white lead coming from the rubber thread on which he worked in the defendant's mill, evidence is competent that other persons, some of whom worked at the same time in the same room with the plaintiff under similar conditions, and some of whom worked there under similar conditions a few months before and a few months after him, were ill from lead poisoning; that a former employee of the mill, after working there for three and a half or four months, a short time before the plaintiff was there, was ill and had the same symptoms; and that a physician, at a time which he could not fix exactly, had a number of like cases in patients coming from the same room of the defendant's mill.

TORT, for personal injuries occasioned to the plaintiff by lead poisoning from inhaling dust containing white lead, coming from the rubber thread on which he worked in the defendant's mill.

At the trial in the Superior Court, before *Mason*, C. J., the

jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The material facts appear in the opinion.

*J. C. Hammond & H. P. Field*, for the defendant.

*W. H. Brooks*, for the plaintiff.

KNOWLTON, J. The only exception in this case was to the admission of certain testimony on the question whether the plaintiff's illness was caused by lead poisoning from inhaling dust containing white lead, coming from the rubber thread on which he worked in the defendant's mill, or whether it arose from other causes. This question may be divided into two branches; first, the inquiry whether the defendant's mill was a place in which one would be likely or liable to be poisoned by inhaling lead in the form of dust, and secondly, if so, whether the plaintiff was so poisoned. The plaintiff was allowed to introduce evidence to show that other persons who worked at the same time in the same room in the defendant's mill, and under similar conditions, were ill from lead poisoning, and that other persons who worked there under similar conditions a few months before and a few months after were also ill from the same cause. There was also evidence from a physician, who could not fix the time exactly, that he had a number of like cases in patients coming from the same room of the defendant's mill. One Wood was permitted to testify that, after working in this mill three and a half or four months, a short time before the plaintiff was there, he was ill, and had the same symptoms. All this testimony was introduced subject to the same general exception of the defendant.

The question in dispute was whether there was an impalpable poison in the atmosphere of the defendant's mill which would be likely to have a certain effect upon the human body. The most natural way of obtaining the true answer to the question was by inquiring what effects, if any, had been produced upon persons accustomed to breathe this atmosphere. The conditions under which the different persons in the room were exposed were similar, and so far as that factor in the problem is concerned we should expect precisely the same effect. These persons had bodies similar in form and structure, with the same organs, governed by the same laws, and with like susceptibilities. Of course, there were diversities in their previous

experiences and in their condition outside of the mill, and on that account the effects upon the different persons might differ slightly.    But, so far as appears, the symptoms of their illness were so distinctive and peculiar as to point almost conclusively to the same cause.

We are of opinion that this evidence tended to show that there was exposure in the defendant's mill which caused the same illness in them all.    There was undoubtedly evidence in regard to the symptoms and nature of the plaintiff's illness which is not reported in the bill of exceptions, all of which, presumably, was considered by the presiding justice in determining whether the evidence should be admitted.    In deciding questions of this kind much depends on the circumstances of each particular case, and much is therefore left to the discretion of the judge.    To express this conclusion in another way, whenever the competency of evidence depends on the view to be taken of any doubtful question of fact which appears of record, or on facts and evidence not reported, this court will not attempt to revise the decision of the trial judge.    *Commonwealth* v. *Gray*, 129 Mass. 474.    *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169, 171.    *Robinson* v. *Fitchburg & Worcester Railroad*, 7 Gray, 92, 95.

In *Baxter* v. *Doe*, 142 Mass. 558, which was an action for damages against the owner of a vessel for neglect to furnish proper food to a sailor, evidence that other members of the crew exposed to similar conditions were sick at about the same time was held to be competent.    *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169, and 1 Allen, 343, was an action for negligently suffering gas to escape into a house occupied by the plaintiff, whereby he was made sick, and it was decided that evidence of the sickness of other persons in the same house, exposed to the same conditions, might be introduced by the plaintiff.    Similar principles were involved in the judgments in *Hodgkins* v. *Chappell*, 128 Mass. 197, *Brierly* v. *Davol Mills*, 128 Mass. 291, and *Reeve* v. *Dennett*, 145 Mass. 23.    See also *Crocker* v. *McGregor*, 76 Maine, 282 ; *Boyce* v. *Cheshire Railroad*, 43 N. H. 627 ; *Darling* v. *Westmoreland*, 52 N. H. 401 ; *Cleaveland* v. *Grand Trunk Railway*, 42 Vt. 449 ; *House* v. *Metcalf*, 27 Conn. 631 ; *Field* v. *New York Central Railroad*, 32 N. Y. 339 ; *Grand Trunk Railroad*

v. *Richardson*, 91 U. S. 454; *District of Columbia* v. *Armes*, 107 U. S. 519, 524; *Brown* v. *Eastern & Midlands Railway*, 22 Q. B. D. 391, 393.

The objection that such testimony is likely to lead into collateral inquiries, in order to establish its force or to show its weakness, is one that may be made to almost all circumstantial evidence, and which addresses itself to the sound discretion of the court. If it seems probable that a line of inquiry will lead into side issues not anticipated by the parties, and which will be likely to distract and confuse the jury and unreasonably protract the trial, the questions should be excluded; but if on proofs of identity or likeness of conditions a fact will have important probative force, it should not be excluded if its relation to the case can easily be shown.

It must be assumed in this case, in the absence of anything to show the contrary, that there was no great practical difficulty in presenting and considering the evidence which was objected to, and that the presiding justice found that the similarity of conditions was so clearly and so easily shown as to make the testimony proper.                    *Exceptions overruled.*