ECONOMY HOG AND CATTLE POWDER COMPANY ET AL. *v.* COMPTON ET AL.

[No. 24,131.   Filed April 5, 1922.   Rehearing denied June 8, 1922.]

1. TRIAL.—*Verdict.—Interrogatories.—Applicability to Issues.*— Special interrogatories must plainly cover the issues in order that answers thereto may overthrow the general verdict. p. 223.

2. FRAUD.—*Verdict.—Answers to Interrogatories.—Conflict.*—In an action against a stock food company and its agent for the death of hogs to which was fed stock powder which defendants induced plaintiffs to purchase by fraudulent representations, general verdict for plaintiff *held* not overthrown by answers to special interrogatories on the theory that, whereas the complaint charged a joint wrong, the answers show a constructive liability only, in that the sale was made by an agent and that the principal took no part in the transaction. p. 223.

3. FRAUD.—*False Representations.— Sale of Stock Powder.— Evidence.— Admissibility.— Effect of Powder on Other Animals.*—In an action for the death and sickness of hogs from stock powder sold to plaintiffs by fraudulent representations, plaintiff was properly allowed to show a like effect of the powder on the stomachs of the hogs of others under like conditions and circumstances. p. 224.

4. TRIAL.—*Instructions.—Explanation of Terms Used.*—A party cannot complain of the use of terms in an instruction without explanation, where he failed to request that such terms be explained. p. 226.

5. FRAUD.—*Fraudulent Representations.—Death of Hogs from Stock Powder.—Measure of Damages.*—Where hogs died from stock powder sold with fraudulent representations that it was beneficial for conditioning them, the measure of damages is their fair market value. p. 226.

6. FRAUD.—*Fraudulent Representations.—Hogs Made Sick by Stock Powder.*—Where hogs were made sick from stock powder sold with fraudulent representations that it was beneficial for conditioning them, but which completely recovered, the measure of damages is the cost of cure, and not the difference in their fair market value before the injury and immediately thereafter. p. 226.

7. APPEAL.—*Review.—Instructions.—Error in Instruction as to Measure of Damages for Fraud.*—Error in instruction in stating a false measure of actual damages for fraud is not overcome by the fact that punitive damage may be awarded, and if an instruction as to punitive damages had been given, it would not have cured the error. p. 226.

From Shelby Circuit Court; *Alonzo Blair,* Judge.

Action by Roscoe Compton and others against the Economy Hog and Cattle Powder Company and another. From a judgment for plaintiffs, the defendants appeal. (Transferred from the Appellate Court under §1394, cl. 2, Burns 1914, Acts 1901 p. 565.) *Reversed.*

*Ed K. Adams, Miller, Barnett & Miller, S. D. Miller, Frank C. Dailey, Will H. Thompson* and *A. L. Rabb,* for appellants.

*Hall, Williams & Pell* and *Featheringill & Drybread,* for appellees.

TOWNSEND, J.—Appellees sued appellants for fraud and deceit. Appellant company is a foreign corporation whose home is at Shenandoah, Iowa. Appellant Rodgers is the company's district agent at Franklin, Indiana. In substance and effect the complaint alleges that appellants falsely represented by printed advertisements and verbal statements that their "Economy Stock Powder" was beneficial for conditioning hogs, and particularly good for brood sows; that appellees relied on these representations, purchased the powder and fed it to their brood sows which were in health; that the powder made them sick and caused the death of two of them.

Verdict for appellees in the sum of $350 and judgment accordingly.

Appellants first claim that the special interrogatories overthrow the general verdict, because the complaint charges a joint wrong and the answers to the interrogatories show a "constructive liability."

1, 2.

That is to say, that the sale of the powder was by the agent; that the powder belonged to the company, but the company had nothing to do with the sale.

The interrogatories and answers affecting this ques-

tion in substance are: (1) Did plaintiffs purchase the powder from either of the defendants? A. Yes. (2) From which one? A. Rodgers. (3) To whom did the powder belong at the time of the sale? A. The company. (5) What did the company have to do in making the sale? A. Nothing. (6) Did Rodgers sell for himself or the company? A. The company.

Now the general verdict of the jurors should not be overthrown on any such answers. When the jury says the company had nothing to do with the sale, they are thinking as laymen and not as lawyers. And so with the other answers. General verdicts should not be overthrown by fine legal distinctions. These questions are propounded to ordinary men. Litigants must have the courage of their convictions in propounding special interrogatories and *plainly* cover the issue, if they expect to succeed in overthrowing a general verdict. The trial court was right in overruling the motion

3. Appellees' veterinary, after testifying that he examined the stomach of one of appellees' dead sows, that she had gastritis, and after describing what he found, was permitted to testify, over objection, that he had examined the stomachs of dead hogs which belonged to other persons in the community and found that they had gastritis and found like conditions in the stomachs. Appellants claim this was error. In their brief they make it appear that this witness was permitted to testify that these other persons told him that they had given their hogs the powder in question. Of course, if this were true, it would be plain error, because it violates the fundamental rule against hearsay. There is no chance to cross-examine those who told the witness. If they were brought into court and put under oath, they might admit that they told the witness something that was not so; or might testify that they did not tell him anything.

But an examination of the record shows that the trial court was guilty of no such folly.   He confined the evidence on this subject exactly as it should be and indicated by his rulings that he appreciated the point.   He said in effect, in overruling appellants' objection, that a multiplication of instances in like circumstances had some force.   And he said, in overruling a motion to strike:   "The motion is overruled at *this time.*"   (Our italics.)   Now some of the persons mentioned by the witness were produced by appellees and testified that they had given the powder to their hogs under like conditions.   But some of them were not produced.   Appellants did not renew their motion or make another motion specifically calling the court's attention to the names of those who had not testified.   Furthermore, it nowhere appears in the examination of the witness in chief that he testified to anything that was told him.   If this is in the record at all, it is brought in by appellants' cross-examination.

We do not understand that appellants are contending that it is not competent to show like effects of the powder on other hogs under like conditions.   We find no objection when the other owners testified.   We also find that the testimony in defense is largely made up by farmers who had used this powder and thought it all that appellants claimed for it.   It would hardly be safe to confine the case to the scientific proposition of the chemical analysis and mechanical mixture of the powder, and the effect which the combination would have upon hogs.   This must be especially true where the symptoms are all objective.—Hogs do not speak our language.

"The tendency of drugs   *   *   *   in respect of their effect upon animals or human beings, may be established by evidence of their effect upon other animals or human beings similarly situated."   11 Ency. of Evidence 814.

*Shea* v. *Glendale, etc., Co.* (1894), 162 Mass. 463, 38 N. E. 1123; *Epps* v. *State* (1885), 102 Ind. 539, 549, 1 N. E. 491.

Of course, this should be carefully limited to like conditions and circumstances. The tendency of the untrained mind to indulge in *post hoc, ergo propter hoc* reasoning is strong enough, without being encouraged by lax rulings which admit that which is not similar.

Appellants complain of the court's instruction No. 7, because it uses, without explanation, the terms: "direct evidence," "any proven circumstance or circumstances" and "material matters involved." In the first place, it is a sufficient answer to this to say that appellants did not ask for such an explanation; and, in the second place, explanation seems hardly necessary in the connection in which the phrases are used.

Appellants next claim excessive damages. They present this in connection with the following instruction: "9. If you find for the plaintiffs against either or both of the defendants, it will become your duty to assess the damages which you find plaintiffs have sustained. The measure of such damages as to the hogs that died is their fair market value, as established by the evidence. As to the hog that became sick and did not die, the measure of damages would be the difference in the fair market value of said hog before its injury and its fair market value immediately thereafter."

The two sows that died were worth $125 each. The third sow completely recovered in three or four weeks. This evidence is not disputed.

The instruction is correct as to the two hogs that died. It is incorrect as to the one that recovered. The measure of damages as to this hog is what it cost to cure her. Appellees attempt to meet this error by saying that punitive damages may be awarded for fraud and deceit.

The jury was not so informed.  If the jury had been so instructed, it would not cure this error.  The court here gave a false measure for actual damage.

For the error in this instruction, the judgment is reversed, with instructions to sustain appellants' motion for new trial.