PHILIP NAPPI, Appellant, *v.* FALCON TRUCK RENTING CORP., Respondent.

First Department, June 7, 1955.

*Herbert L. Fine* of counsel (*Milton Morgenstern,* attorney), for appellant.

*James M. Gilleran* of counsel (*John J. O'Connor,* attorney), for respondent.

Cohn, J. Plaintiff, employed as a truck driver, brings this action against defendant, a truck renting corporation, for personal injuries sustained by plaintiff during the course of his employment. The truck had been rented from defendant by plaintiff's employer. From a judgment entered in favor of defendant upon a unanimous verdict of a jury, plaintiff appeals.

The accident complained of occurred while plaintiff was entering the rear of defendant's truck for the purpose of loading it. The truck was box shaped and its floor was about four feet above the ground; a steel step was attached to the rear section about two feet below the floor of the truck; a hemp rope was affixed to a bar near the top of the truck which was used as an aid in entering. Plaintiff testified that in order to board the rear of the vehicle, he raised his right foot on to the metal step, which he claimed was loose because of missing and defective bolts; that he then utilized the rope as leverage to swing his left foot on to the platform of the truck; that the metal step shifted inward forcing him to put his whole weight on the rope and caused it to snap. He fell backward to the ground striking his back and head and injuring his left hand.

Plaintiff testified that prior to the occurrence of the accident he had repeatedly complained to defendant in writing and orally about the defective condition of the step at the rear of the truck. He attributes his fall and the resulting injuries of which he complains to the sudden shifting of the step under pressure. After the accident, plaintiff walked to a doctor's office a block away, was treated for superficial injuries to his hand and remained away from work for four days. Thereafter, he continued working as a truck driver for the same employer for a full year. He was then compelled to give up his employment because of dizziness, headaches and nervousness, claiming that he was suffering from a post-concussion syndrome. Two physicians called in his behalf testified, in substance, that as a result of the accident, while plaintiff had no permanent physical injuries, he was suffering from a neurosis which might turn into a schizophrenia.

Upon the trial it was plaintiff's claim that the defective condition of the metal step attached to the back of the truck was the primary cause of the accident and that defendant's failure

to repair this condition after due notice was the negligence for which the latter was liable.

In cross-examining plaintiff and for the purpose of impeaching his credibility, defendant's attorney offered in evidence a document in the handwriting of plaintiff which was an employee's claim for compensation filed by him with the Workmen's Compensation Board. In this document plaintiff had made no reference to the existence of a defective step on the truck and apparently attributed the accident solely to the fact that the rope had snapped. In answer to the question as to how the accident occurred, plaintiff stated therein: " Fell off the back of the truck about four feet high. The rope snapped as I was climbing up, falling on my back, head and left arm." The portion read to the jury also indicated that plaintiff had been away from his employment for three days and that he had given immediate notice of the injury to his employer. It also contained a statement that plaintiff was presenting: " my claim to the Chairman, Workmen's Compensation Board, for compensation for disability resulting from an accident arising out of and in the course of my employment ". The writing was offered and received in evidence over objection and exception for the purpose of contradicting the testimony of plaintiff upon the trial. For such purpose it was clearly competent. Plaintiff, in redirect examination through his own attorney, pursued the question of workmen's compensation by asking plaintiff whether he had received a " penny of disability benefits " or compensation of any kind from the board. He was properly permitted to testify that he had not.

It is well-settled law that in a civil action the admissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever or to whomsoever made. (*Reed* v. *McCord,* 160 N. Y. 330, 341; *Jacobs* v. *Gelb,* 271 App. Div. 101, 104.) The proof need not be direct and positive contradiction; it is enough that the testimony and the statements are inconsistent and tend to prove differing facts. (*Larkin* v. *Nassau Elec. R. R. Co.,* 205 N. Y. 267, 269; *McCoy* v. *Gorenstein,* 282 App. Div. 984; *Kesten* v. *Forbes,* 273 App. Div. 646; *Nagel* v. *Paige,* 264 App. Div. 231.)

Where a plaintiff employed by another sues a third party for personal injuries sustained during the course of his employment, it is, of course, improper to offer evidence that plaintiff may procure compensation from his employer if he is unsuccessful in his attempt to secure damages from the third party. Whether or not a claim has been filed with the Workmen's Com-

pensation Board is immaterial so long as an award has not been made. (*Zimber* v. *Kress,* 225 App. Div. 16, 18; *Regan* v. *Frontier Elevator & Mill Co.,* 211 App. Div. 164, 166.) Here, however, reference to workmen's compensation was necessitated by virtue of an inconsistent statement made by this plaintiff at a time when he was not suing a third party and when there was no motive for factual distortion as to how he had sustained his injury. Proof of such prior inconsistent statement in this case was not necessarily limited to its wording. The circumstances under which it was made, the party or agency to whom it was made, and the purpose for which it was made were proper subjects of inquiry. To properly evaluate the alleged inconsistency, the triers of the facts had to know that the document in issue was a claim in workmen's compensation, and that negligence of the employer was not a necessary ingredient of such a claim.

Professor Wigmore states the pertinent rule as follows: " When an evidentiary fact is offered for one purpose, and becomes admissible by satisfying all the rules applicable to it in that capacity, it is not inadmissible because it does not satisfy the rules applicable to it in some other capacity and because the jury might improperly consider it in the latter capacity." (1 Wigmore on Evidence [3d ed.], § 13, p. 300; see, also, 20 Am. Jur., Evidence, §§ 263–264, pp. 252–253; *Wagner* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 210 Cal. 526; *Cook-O'Brien Const. Co.* v. *Crawford,* 26 F. 2d 574, 575.)

Insofar as the charge of the court was concerned, to which plaintiff now makes objection, the court gave adequate instructions to the jury which set forth the law and the rights of plaintiff against a third party and against his own employer. In its manifest desire to avoid confusion and misconception and to safeguard the interests of plaintiff, as well as those of defendant, the court in its charge made the following observation:

" I am saying that to you because I think an informed jury can do a better job than an uninformed jury about the subject, since the question of compensation has had to come out.

" If he takes compensation, which this plaintiff didn't do, then he loses his rights to sue the third party. But here he did not take compensation. He only took the benefits of medical care and, as you have seen, it was excellent medical care all the way through. That he can take without losing his rights.

" Now, the reason the subject of compensation came into this case was because Mr. Nappi told a somewhat different story when he applied for compensation than he did to you on the

witness stand and then it became a question of truth as to how the accident happened, and when it becomes a question of truth the prohibition is removed and the Judge must allow the fact of compensation to come out.

" That is how the subject got in here."

Upon request of plaintiff's counsel, and at the conclusion of the main charge, the court, again without exception, stated:

" The Court: I will tell the jury this, the plaintiff has an absolute right to come here and try to get more money than he could in compensation. The fact that he can get something in compensation has nothing whatever to do with this case. That is a right granted to him by law. He can come here and try to get what a jury will give him.

" It is only if you give him nothing that he has a right to go back to compensation, but you should really not take that into consideration."

In all the circumstances of this case, it is to be assumed that the jury accepted the law as recited by the court and that it admeasured the testimony fairly and impartially. Surely, it may not be said that the reference to workmen's compensation could have improperly influenced the jury in its verdict. An examination of the record leaves one with the definite impression that the jury was fully warranted in finding that plaintiff had no cause of action. Jurors are neither lawless nor are they corrupt. By and large they are intelligent, just and fair, and it is reasonable to conclude that as jurors they have not left behind them their common sense and sound judgment, where, as here, they have been appropriately instructed upon the law by an experienced and capable Trial Judge. In *Pennsylvania Co.* v. *Roy* (102 U. S. 451, 459) the court said: " The presumption should not be indulged that the jury were too ignorant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine." (See, also, *Rinklin* v. *Acker,* 125 App. Div. 244, 249.)

We find no error in the charge of the court nor in its rulings upon the admission of evidence.

The judgment should be affirmed, with costs.

BASTOW, J. (dissenting). In my opinion, the judgment appealed from should be reversed and a new trial granted. It was proper under the circumstances to permit the defendant to introduce proof upon cross-examination of the plaintiff that he had made a prior inconsistent statement in a writing subscribed by him.

(Civ. Prac. Act, § 343-a.) It could further have been shown that the signed writing had been filed with a State agency without revealing that the paper was an application for benefits under the Workmen's Compensation Law. The grievous error occurred, however, when the document was received in evidence in its entirety over plaintiff's objection and defense counsel was permitted to read a substantial portion of it to the jury, including the statement that plaintiff had presented a claim for compensation. This started a chain of events that prejudiced plaintiff's right to a fair trial. Plaintiff's counsel in an attempt to remedy the injury that had been done, then brought out that plaintiff had received no compensation benefits.

The court in its charge undertook a lengthy discussion of plaintiff's right both to take compensation benefits and to sue a third party for alleged negligence. Among other things, the court told the jury that the plaintiff '' can take compensation against his employer — and it doesn't make any difference how the accident happened when he does that. He doesn't have to prove negligence. He doesn't have to prove freedom from contributory negligence. All he has to show is that he was hurt. Or he doesn't have to accept compensation, if he doesn't want to. He may proceed against the party — we call it the third party — who is responsible for the injury. If he does that he doesn't lose his rights to compensation. He can have that, in any event. Whichever is more, that he can have.''

Again plaintiff's counsel in an attempt to remedy the quite apparent disastrous effect of the court's statements requested the court '' to instruct the jury that they are not to take the issue as to another forum in their deliberations with respect to this case.'' Whereupon the court said, and these were the last words the jury heard before retiring: '' I will tell the jury this, the plaintiff has an absolute right to come here and try to get more money than he could in compensation. The fact that he can get something in compensation has nothing whatever to do with this case. That is a right granted to him by law. He can come here and try to get what a jury will give him. It is only if you give him nothing that he has a right to go back to compensation, but you should really not take that into consideration.''

Just a few years after the enactment of the Workmen's Compensation Law, this court in *Posnick* v. *Crystal* (181 App. Div. 660, 661) had occasion to consider the question of permitting evidence to be received that plaintiff's employer was insured under the Workmen's Compensation Law. In reversing a judg-

ment in favor of the defendant, we said that "[t]he only possible purpose of introducing this evidence under the circumstances was to achieve the natural result of leading the jury to suspect or infer that plaintiff had been or could be compensated by merely making application under the Workmen's Compensation Law and, therefore, his case should not be seriously regarded. This was distinctly harmful and may well have accounted for the verdict."

This authority was followed in *Regan* v. *Frontier Elevator & Mill Co.* (211 App. Div. 164, 166), where it was said that " [s]uch insistence by defendant's counsel on the plaintiff's right under the Workmen's Compensation Law as occurred in this case might well influence the jury toward the erroneous view that the plaintiff's loss should find compensation in part at least from his employer under the provisions of that statute. (*Posnick* v. *Crystal,* 181 App. Div. 660.) The situation is analogous to that which arises when reference is made on behalf of plaintiff to defendant's protection by insurance. The courts have long and consistently condemned such practice in vigorous terms. [Citing cases.] " Although no exceptions had been taken to the rulings of the court, the verdict was set aside in the interests of justice.

*Zimber* v. *Kress* (225 App. Div. 16, 18) presented a situation in some respects analogous to the instant case. There the plaintiff's rights to benefits under the Workmen's Compensation Law were developed upon the trial. There, as here, the court in its charge expounded at length upon the plaintiff's right to sue a third party and, if unsuccessful, return for workmen's compensation. In reversing the judgment for the defendants, Mr. Justice SEARS writing for a unanimous court said that " [i]t was no subject for consideration of the jury that the plaintiff might, if he failed in the present action, secure certain compensation from his employer, or the insurance carrier. This was an ordinary negligence case, and the Workmen's Compensation Law had nothing to do with it. Whether or not a claim had been filed by the claimant was entirely immaterial as long as an award had not been made."

Here the defendant would have been fully protected if it had been permitted to cross-examine plaintiff in regard to any contradictory statements made by him in a signed writing filed with an agency of the State of New York. The jury would thus have known the circumstances under which the statement was made and that it was not a casual writing made without due consideration. Pressing his advantage, however, defense counsel not only

succeeded in having the entire document received in evidence but proceeded to read most of it including the statement that " I hereby present my claim to the Chairman, Workmen's Compensation Board, for compensation for disability ".

This, when considered with the court's charge, deprived plaintiff of a fair trial. " Courts of justice exist for the purpose of securing a fair determination of controversies. When counsel resort to improper practices to win a verdict, they imperil the verdict which they thus seek." (*Nicholas* v. *Rosenthal*, 283 App. Div. 9, 13.)

The majority opinion, while recognizing these rules of evidence, reaches the conclusion that all of this was necessitated by virtue of an inconsistent statement made by the plaintiff at a time when he was not suing a third party and when there was no motive for factual distortion as to how he had sustained his injury. Even if we accept this as a necessity, and I cannot, it seems to me that there is no conceivable justification for the iteration and reiteration in the court's charge upon the subject of the plaintiff's right to sue a third party for negligence and, if unsuccessful, his right to return for compensation benefits. It is difficult for me to understand how — in the language of the majority opinion — the jury was so instructed, among other reasons, " to safeguard the interests of plaintiff ". When, as here, close questions of fact were presented to the jury, it not only did not safeguard any rights of the plaintiff but destroyed any possibility of recovery.

I cannot see how the rule concerning multiple admissibility of evidence has any application to this state of facts. The only evidentiary fact here admissible was the inconsistent statement made by the plaintiff in the notice of claim. The document was not the evidentiary fact. Section 343-a of the Civil Practice Act requires that proof of the prior inconsistent statement may only be received when it is made in a writing subscribed by the witness or made under oath. This is a procedural requirement that makes the alleged contradictory facts admissible in evidence. When we speak of multiple admissibility of evidence, we are referring to facts offered and admissible for one purpose and which facts are not inadmissible because they do not satisfy the rules of evidence in some other capacity. It is not my understanding that because certain facts are admissible that an entire document which is highly prejudicial may be received in evidence under the multiple admissibility rule when the prejudicial matter may be kept from the jury.

The majority go forward on the premise — with which there can be no disagreement — that " By and large [jurors] are intelligent, just and fair ". But it has been my understanding that " [o]ur system of admissibility [of evidence] is based on the purpose of saving the jurors from being misled by certain kinds of evidence. Their inexperience in analyzing evidence, and their unfamiliarity with the chicanery of counsel, distinguish them from the judge in this respect. As long, then, as the jury system is retained, certain fundamentals (at least) in our rules of Evidence must be retained." (1 Wigmore on Evidence [3d ed.], § 8c, p. 261.)

Here, by one grievous error, the subject of workmen's compensation was injected into the issues presented to the jury. It was unnecessary and could have been avoided. No matter how " intelligent, just and fair " twelve jurors may have been, no cautionary words of the court could subtract from the fact that they were plainly told that the plaintiff could proceed against the present defendant and thereby the plaintiff did not lose his rights to compensation and further that if the jury gave him nothing, he had a right to take compensation. While the court did instruct the jury that they should not take all of this into consideration, it seems to me that it would be naive to believe that they did not do so.

The judgment appealed from should be reversed and a new trial granted.

PECK, P. J., BOTEIN and RABIN, JJ., concur with COHN, J.; BASTOW, J., dissents and votes to reverse and grant a new trial, in opinion.

Judgment affirmed, with costs.