75 N.J. Super. 123 (1962)
182 A.2d 381
JUDSON H. CLARK, PLAINTIFF-APPELLANT,
v.
PAUL PICCILLO AND ACME FAST FREIGHT, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1962.
Decided June 18, 1962.
*124 Before Judges CONFORD, GAULKIN and KILKENNY.
*125 Mr. Alexander Levchuk argued the cause for appellant.
Mr. Robert V. Carton argued the cause for respondent Paul Piccillo (Messrs. Durand, Ivins & Carton, attorneys).
Mr. Edward E. Kuebler argued the cause for respondent Acme Fast Freight, Inc.
The opinion of the court was delivered by KILKENNY, J.A.D.
Trial of plaintiff's personal injury negligence action in the Superior Court, Law Division, resulted in a jury verdict in favor of the defendants of no cause for action. Plaintiff's motion for a new trial having been denied and judgment having been entered on the basis of the jury's verdict, plaintiff appealed.
On December 27, 1957 the plaintiff, then and for about eight years prior thereto in the employ of Amboy Express Co., drove a tractor-trailer of his employer to a freight depot of the defendant, Acme Fast Freight, Inc., located in Bound Brook, New Jersey, for the purpose of delivering some portable radios boxed in cartons and some rugs, one of which weighed approximately 700 pounds. This large rug was lying on the floor of the trailer near its left side, as one looked into the trailer from the rear, and the front end of the rug, nearest the cab of the trailer, was imbedded to the extent of one foot or more under the radios which were stacked in the trailer on top of the rug at that point. The plaintiff, who was assisted in unloading the trailer by Robert Eden and the defendant, Paul Piccillo, employees of Acme, first removed the smaller rugs or miscellaneous items which were on the right side of the trailer, as one looked in from the rear. It was thereafter, when plaintiff, Eden and Piccillo were engaged in their joint effort to remove the large rug from the trailer, that the incident arose which gave rise to plaintiff's claim against the defendants.
*126 Since no testimony was offered on behalf of the defendants, who chose to rest their case after the plaintiff had concluded the presentation of his evidence and defendants' motion for a dismissal had been denied, the only testimony descriptive of the accident came from the lips of the plaintiff. He testified as follows:
"Well, we had this big rug on the left side of the trailer * * * fifteen foot long and about a yard wide * * * well, it's got a flat bottom. When that weight gets on, it's a circular appearance * * * approximately 700 pounds * * * Robert Eaton [sic] took his hand truck and put the blade of it under the spool of the rug. * * * It [the hand truck] has two wheels, handles, you use it to transport boxes or whatever you have. * * * He put the blade of the hand truck underneath the spools of the rug to jack it out toward the center of the trailer, the front end of the rug was imbedded in some radios about a foot. In order to get the rug, he jacked the back part out toward the center of the trailer, then he took the blade of the hand truck and put it on the floor and shoved it under the rug, bore down on the handles. The end of the rug cleared the floor about a foot, or approximately nine inches or a foot, then Paul Piccillo put the 2 x 4 underneath the rug for the lift. It [the 2 x 4] was a stake, it was on that order, I don't know if it was exactly a 2 x 4 but it was a stake out of a flat bed trailer body. * * * Now, I was up against the trailer body that was on the left side and I just had enough room to get in to make the lift, that gave Paul Piccillo the longest end of the 2 x 4. Now, he put it under there and we took up the slack and I told him to lift easy, the rug is heavy, so he started up and as we got up, he shifted the weight over onto me, causing me to wince. I had to let go. At that time Robert Eaton threw the hand truck and it caught the rug, not in the proper place, but it was enough so that two men could bear down and take it off. I told him, I said, `My back, something is wrong with my back.' * * * He [Piccillo] heaved up his end and shifted the weight of that rug, it came over onto me. * * * Well, I felt a quirk in my back, it felt to me like somebody hit me in the back with a plank. That's what the experience of that was."
On cross-examination, plaintiff admitted that at the time the effort was being made to remove the large rug, he was working in a rather small space, about a foot or a foot and a half between the rug and the left side of the trailer, with his left side against the trailer and facing toward the front *127 of the trailer; that he was in somewhat of a cramped position and standing sideways and in a "tight squeeze"; that, by virtue of the limitation of space on the left side of the rug, he had the short end of the 2 x 4 and this caused a greater distribution of weight to be on his side, rather than on Piccillo's side; and that he was "aware of the uneven distribution of the weight of the rug on the 2 x 4 as he started to lift, and nevertheless started to lift." He also conceded that on many occasions prior thereto he had lifted rugs "by a method to that similarly employed on this day," that is, by getting the blade of the hand truck under the rug, bearing down on the handles of the hand truck to raise the end of the rug, sliding the 2 x 4 under the upraised rug, and then lifting. He testified that this had been the usual method employed at this freight depot for eight years prior to the incident in issue and that there had been no previous mishap. He knew that no other equipment was ever available at this depot and never complained to anyone about it.
The plaintiff was then asked:
"So, what happened then on this day was that a chance was taken to get the rug out in the manner in which it was being taken out, without removing the freight."
His answer was:
"I don't know, but I would say, yes."
The gravamen of the first count of plaintiff's complaint was that Piccillo was negligent during the course of the above-described operation and for that reason was liable for plaintiff's damages; and that Acme, as Piccillo's employer, was liable under the doctrine of respondeat superior. In his second count, plaintiff charged that Acme was negligent in failing to furnish proper equipment for the unloading operation. The issues of negligence, contributory negligence and assumption of risk were submitted to the jury with the *128 result first noted above. Neither in the application for a new trial nor on this appeal has plaintiff contended that the verdict was against the weight of evidence. From the foregoing general factual picture, we now consider plaintiff's arguments on appeal.
Plaintiff's first point is that the trial court erred in calling into chambers during the trial for interrogation and instruction, first, one juror, and then a group of four jurors, after it appeared that the one juror had brought into court during the trial and exhibited to the four other jurors a picture of a fork lift truck. There had been the prior testimony that Acme should have provided a fork lift truck.
On the morning of the last day of trial, one of the jurors asked the court officer if it was all right to show the other jurors a picture of a fork lift truck in a pamphlet that he had with him, stating that he had already shown this picture to some of the jurors. The court officer reported the incident to the trial judge who thereupon called all the attorneys into his chambers for a conference. The trial judge suggested that a statement be placed on the record by the juror to see how far he had gone with this pamphlet and picture. The attorneys were advised that the test of impropriety in such a case was the capacity of the irregular matter to influence the jury. Counsel for Acme thereupon moved for a mistrial. Counsel for Piccillo made no motion. The plaintiff's attorney advised the court that he did not want a mistrial and expressed the belief that the picture would not influence the particular juror. He wanted that juror called in to be questioned and given individual instruction. This was done in the presence of all counsel, the plaintiff, and the court reporter. The juror stated that he had shown the picture to two ladies and two gentlemen on the jury, had no further conversations with them regarding the picture, and that the picture would not influence any determination by him as to the outcome of the case. Plaintiff's attorney then suggested that the trial court address the whole panel, but the trial judge replied that *129 he would first examine the other jurors to whom the picture had been shown. Accordingly, they were brought in and questioned. They admitted that the picture had merely been exhibited to them, that they had not paid very much attention to it, and would not be influenced by it. The trial judge asked the plaintiff if he had heard what was going on, and he responded in the affirmative, and said that whatever his attorney said would be all right with him. His attorney then stated that he would have preferred a mistrial to the calling in of the first juror. However, he had opposed Acme's motion for a mistrial before that was done and had requested the interrogation of the first juror. The trial judge denied Acme's motion for a mistrial and the case proceeded. Later, in charging the jury, the trial court made it clear to all the jurors that "any document not introduced into evidence in the formal course should not be used by you during your deliberations."
We are satisfied that there was no prejudicial error in the conduct of the trial court in this respect; in fact, the plaintiff does not assert that he was prejudiced by the action of the individual juror in exhibiting the picture of the fork lift truck. If this evidence were prejudicial, the prejudice was rather to Acme than to the plaintiff. The plaintiff had testified concerning a fork lift truck and that it should have been used at the Bound Brook terminal in moving heavy items. One basis of his complaint was that Acme had not furnished suitable equipment, since it had given for use only a two-wheel hand truck, a dolly, and a 2 x 4; and, although that had been the customary practice at the Bound Brook terminal, other equipment, including a fork lift, had been used at Acme's other terminals.
It is proper procedure for a trial judge, when such a matter is brought to his attention, to conduct a complete investigation to determine whether the irregularity has any tendency to prejudice the rights of any of the parties to the litigation, and if he determines that no prejudice has resulted or will likely result therefrom, he may properly *130 deny a motion for a mistrial and order the case to proceed. Lawrence v. Tandy & Allen, 14 N.J. 1 (1953); Gail v. New York and New Brunswick Auto Express Co., 131 N.J.L. 346 (Sup. Ct. 1944); Maulsbury v. Shure, 12 N.J. Misc. 137, 140, 170 A. 41 (Sup. Ct. 1934). The plaintiff relies upon Palestroni v. Jacobs, 10 N.J. Super. 266 (App. Div. 1950), but that case is not apposite. The Palestroni case involved the introduction into the jury room by the trial judge without the knowledge or consent of counsel of a dictionary which had not been introduced into evidence.
Under all the circumstances, we conclude that the trial court acted properly in handling this matter and that the plaintiff was in no way prejudiced by the showing of the picture of the fork lift truck and especially in view of the cautionary charge of the judge to the jury.
Plaintiff's second point is that the trial court erred in overruling his objection to the following question propounded by the attorney for the defendant Piccillo:
"Now, sir, in connection with the time that you have not worked, you have been receiving workmen's compensation payments. Have you not?"
Plaintiff objected that the question was improper and prejudicial. The trial judge carefully considered the objection out of the presence of the jury. Piccillo's attorney stated that he was asking the question under the authority of Perry v. Public Service Coordinated Transport, 136 N.J.L. 398 (Sup. Ct. 1947), for the limited purpose of showing plaintiff's disinclination to return to work, as a basis for minimizing his damage claim. The trial court allowed the question to be asked for that limited purpose only, and the answer of the plaintiff was simply, "Yes, I have been." No further details were elicited and the inquiry was not pursued beyond the aforesaid single question and brief single answer.
Thereafter, in charging the jury, the trial court took particular pains to explain to the jurors that the aforesaid inquiry was allowed for a limited purpose only. It said:
*131 "I limited the introduction of that testimony in accordance with the law and I desire to charge you as follows:
I charge you that any such consideration, any that you may give to the plaintiff that he receives workmen's compensation should be limited to the question of whether or not it has any bearing upon the plaintiff's disinclination to work. If you find there is any disinclination on his part to resume his normal occupation when he might otherwise have taken up his customary line of work. In other words, I permitted it for the limited purpose for you to determine whether or not he has manifested or shown a disinclination to work and for that purpose alone.
I further charge you that if your verdict should be in favor of the plaintiff against the defendant in this matter, that you should not under any circumstances take into consideration the fact that he has received compensation, for you cannot deduct the amount of compensation, workmen's compensation, which he has received from any verdict or amount that you desire to award him if you find that he is entitled to a verdict."
Perry v. Public Service Coordinated Transport supports the aforesaid ruling by the trial court. There, as here, the admission of proof that plaintiff had received workmen's compensation was "on the hypothesis that the man had extended his period of inactivity following the accident to an unnecessary length for the reason that he was being paid disability for the period he was unable to work." (136 N.J.L., at p. 399). In the instant case, there was much evidence from which the jury could have found malingering by this plaintiff. In Perry "the status of that proof as thus circumscribed was clearly stated to the jury by the judge in his charge" (ibid.) in language similar to that employed here. Perry found "no error in that ruling." (136 N.J.L., at p. 400.) Our conclusion should be the same, unless we repudiate this rule which has not been disavowed since its pronouncement by then Chief Justice Case in 1948 and find that the challenged single question and answer before us, under all the circumstances, was prejudicial to the plaintiff.
We are satisfied that the rule in Perry, which allows proof of the receipt of workmen's compensation by the plaintiff for the limited purpose of showing his disinclination to *132 work, even under the cautionary instruction of the trial court, ought to be discarded and that its future use in our trial courts should be discontinued. If there is any probative value in such evidence as tending to establish that the plaintiff is a malingerer, it is very slight and is far outweighed by the potential prejudice to the plaintiff inherent in the exposure of such information to the jury. In LaRocca v. Ench, 35 N.J. Super. 53, 56-57 (App. Div. 1955), Judge (now Mr. Justice) Francis said:
"In our view it is prejudicial to indicate to the jury that the plaintiff has or may have another remedy by way of workmen's compensation. This is particularly true in a case where there is a close factual issue as to whether the person whose negligent act caused the injury was an employee of the third person defendant or of the plaintiff's employer.

* * * * * * * *
Injection of the element of a possible remedy for the plaintiff in workmen's compensation in actions like this by showing that his employer carries workmen's compensation insurance, or that he could sue for such compensation in the event of an adverse verdict, or that such benefits had been received, has been held to require a new trial."
See, too, the cases cited in LaRocca v. Ench on this point, and also the annotation in 77 A.L.R.2d 1154 (1961). The view generally held is that introduction of evidence of workmen's compensation is prejudicial, usually requiring a reversal. Accordingly, the Perry rule allowing proof of workmen's compensation received by the plaintiff, for the purpose of showing a plaintiff's disinclination to work, is hereby disavowed for future use.
There are occasions, however, when reference to the workmen's compensation proceeding is pertinent and necessary. For example, in Nappi v. Falcon Truck Renting Corp., 286 App. Div. 123, 141 N.Y.S.2d 424 (App. Div. 1955), affirmed 1 N.Y.2d 750, 152 N.Y.S.2d 297, 135 N.E.2d 51 (Ct. App. 1956), defendant's evidence relating to plaintiff's compensation claim was deemed proper, even over objection, for the purpose of contradicting plaintiff's testimony *133 as to the manner in which the injury occurred. So, too, in Mazzuchelli v. Silberberg, 29 N.J. 15 (1959), our Supreme Court held that it was not error for the trial court to admit evidence that plaintiff had obtained workmen's compensation as the result of the accident, when such proof was needed to support Silberberg's defense that plaintiff's remedy against him was solely under the Workmen's Compensation Act. As to plaintiff's argument that this proof prejudiced his cause of action against the codefendant, Nitolli, who was being sued as a third-party tortfeasor, the Supreme Court said:
"In the circumstances, the trial judge properly received the evidence on a contested issue before him. He instructed the jury to disregard it with respect to the controversy between plaintiff and Nitolli. We find no error."
We are satisfied that the single general question as to plaintiff's receipt of workmen's compensation was asked by defendant's attorney in good faith for a limited proper purpose under the sanction of a judicial precedent which had remained undisturbed for years. The trial court's ruling was based on that decision and the jury was carefully instructed in language consistent therewith. We must assume, as did the Supreme Court in Mazzuchelli v. Silberberg, supra, that the jury abided by the instructions of the court. There can be no assumption under our system of jurisprudence that the jury will disregard the instructions of the trial court. State v. DeZeler, 230 Minn. 39, 41 N.W.2d 313, 15 A.L.R.2d 1137, 1147 (Sup. Ct. 1950). "So long as the jury system is in vogue courts must assume that jurors possess sufficient intelligence and force of character to discharge their duty when properly directed." Pascoe v. Nelson, 52 Mont. 405, 158 P. 317, 318 (Sup. Ct. 1916); Hayward v. Richardson Constr. Co., 136 Mont. 241, 347 P.2d 475, 479 (Sup. Ct. 1959); Yost v. Hall, 233 N.C. 463, 64 S.E.2d 554 (Sup. Ct. 1951); Huber v. Henry J. Kaiser Co., 71 Cal. App.2d 278, 162 P.2d 693 (D. Ct. App. 1945).
*134 We think, as did the court in Hayward v. Richardson Constr. Co., supra, "it is a fair inference that the jury did follow the instruction and found for the defendant on the question of liability * * * based on plaintiff's failure to prove by a preponderance of the evidence that defendant was negligent rather than on the suggestion that plaintiff had received workmen's compensation." (136 Mont. 241, 347 P.2d, at p. 479). The trial court evidently reached the same conclusion when it denied plaintiff's motion for a new trial, when this ground, among others, was specifically urged. Its finding inferentially of no prejudice should not be disturbed unless plainly wrong. Brown v. McCuan, 56 Cal. App.2d 35, 132 P.2d 838 (D. Ct. App. 1942); Covely v. C.A.B. Constr. Co., 110 Cal. App.2d 30, 242 P.2d 87 (D. Ct. App. 1957).
The instant case did not involve "a close factual issue," as in LaRocca v. Ench, supra. As noted above, plaintiff did not contend in the trial court, in moving for a new trial, and does not contend here that the verdict is against the weight of the evidence, even though defendants offered no controverting proofs. The facts are very similar to those in DiBernardo v. Delaware, Lackawanna & Western R. Co., 130 N.J.L. 479 (E. & A. 1943), where the grant of a nonsuit was approved. As the court there stated (130 N.J.L., at p. 483):
"The proofs merely indicate that an employee engaged in doing heavy work strained his back while doing such work in the usual way."
The great weight of the evidence supports the jury verdict of no cause for action. We conclude that plaintiff suffered no prejudice in this case by the challenged inquiry and, for this reason, no basis for reversal exists on this ground.
We have carefully considered the remaining points argued by plaintiff in his brief. We deem it unnecessary to discuss them since we find each of them lacking in any substantial merit.
Finding no prejudicial error, the judgment is affirmed.