Meyer, J.
(dissenting). Crucial to the determination of this appeal is the fact that the three questions and answers plaintiffs sought to read from defendant’s deposition constituted an admission on his part bearing materially upon the issue of decedent’s contributory negligence. I agree that nei *647 ther CPLR 3117 nor CPLR 4514 gives a party the absolute right to decide the point in the trial at which he will read to a jury an inconsistent statement of his opponent made during a deposition taken under oath. Both sections deal with admissibility and while either would make the three questions and answers in issue admissible, neither deals with the time at which such evidence is to be introduced nor indicates that the right to introduce it may not be waived. That does not leave the matter in the wholly unfettered discretion of the Trial Judge, however. Admissible evidence is not to be excluded on the basis of generalizations concerning what the effect of its admission could be, but rather only when the specific circumstances of the particular case warrant doing so. Under the circumstances of this case exclusion of the three questions and answers was an abuse of discretion, prejudicial to plaintiffs, and requires reversal and the granting of a new trial.
As then Judge Fuld put it in another context in Ando v Woodberry (8 NY2d 165, 167), "[I]t is well to recall the principle, basic to our law of evidence, that 'All facts having rational probative value are admissible’ unless there is sound reason to exclude them, unless, that is 'some specific rule forbids’ (1 Wigmore, Evidence [3d ed., 1940], p. 293). It is this general principle which gives rationality, coherence and justification to our system of evidence and we may neglect it only at the risk of turning that system into a trackless morass of arbitrary and artificial rules.”[1] A corollary of that principle is that though the Trial Judge has the power through his control of the conduct of the trial to exclude admissible evidence for reasons of fairness, it is not a power to be exercised by way of pavlovian reaction, but only when there is good reason, in terms of unfairness to the opposing side in so doing. The role of a Trial Judge is a great deal more than that of a traffic cop (see People v Moulton, 43 NY2d 944, 945), but of necessity it is the trial lawyer who determines in the first instance the order in which proof will be presented. He may offer evidence at a particular time to accommodate the convenience of witnesses, because he feels the facts can be most simply presented in a particular order or because he considers a particular point in the trial the time when specific items of evidence will have the greatest- effect on the jury. As concerns clearly relevant *648 and material evidence, his choice, whether strategic or inadvertent, should not be the basis for excluding such evidence from consideration by the jury unless it would in fact be unfair to the other side not to exclude it. Though unfairness was argued by defendant’s attorney, the record clearly demonstrates that there was none.
The majority acknowledges that there was sufficient evidence to take the negligence issue to the jury (p 646), but its statement of general rules and characterization of plaintiffs’ attorney’s conduct obscures the issue upon which the Trial Judge ruled and its relationship to the contributory negligence issue. It will be helpful, therefore, to sharpen focus as to the issue under discussion.
The specific questions and answers which plaintiffs’ counsel sought to read in order to show inconsistency in Dr. Nitschke’s testimony were:
"Question: How far away was he when he[2] went directly in front of you?
"Answer: I don’t recall.
"Question: Could you say it was as far as twenty feet?
"Answer: It may have been.
"Question: Might it have been farther than twenty feet?
"Answer: I doubt it. I really don’t recall exactly.”
It is undisputed that this portion of the deposition had not previously been put before the jury, that plaintiffs’ attorney sought simply to read the questions and answers to the jury without the defendant on the stand, and that defendant had never been examined concerning a statement by him that decedent was no more than 20 feet from defendant when decedent was directly in front of the camper. Irrelevant, therefore, is discussion of the recall of a witness (pp 643-644), the reopening of a whole range of testimony (p 644), diversion of the jury’s attention from the main issues of the case (p 644), limiting re-examination of a witness (p 645), and unnecessary repetition (p 645). Likewise inappropriate is the suggestion that plaintiffs sought to "continue the examination of defendant” by the proffered use of the deposition (p 644), for the majority recognizes (p 644, n 2) that CPLR 4514 makes any prior inconsistent statement under oath admissible and agrees (p 644, n 3) CPLR 3117 permits use of the deposition alone as *649 such a statement. The inappropriateness of the suggestion becomes apparent if we suppose that the out-of-court statement of defendant had been made in an MV-104 report, for that paper would be admissible[3] on the certification of the Commissioner of Motor Vehicles alone at any point in the trial without reference to whether defendant were on the stand at the time or his deposition had been used to contradict him, or even if he had never taken the stand and his deposition had never been read, simply because the statement constituted an admission.[4]
It is, moreover, a misreading of the record to suggest that plaintiffs’ counsel was attempting to "circumvent” the adverse ruling concerning scope of examination on recall (p 644). Counsel did first ask if he could use the deposition while defendant was on the stand but, the Trial Judge having ruled he could not, then asked for a ruling whether he could read from it an inconsistency. The Trial Judge apparently did not believe his prior rulings were being circumvented for he first ruled that he would permit use of the deposition "for that limited purpose”, but then, in light of plaintiffs’ attorney’s limited reservation with respect to further examination of defendant, reversed himself and sustained the objection. Plaintiffs’ attorney then pointed out his right to read the deposition without defendant on the stand and the court reserved decision until after the luncheon recess. After recess, on the basis of additional research, plaintiffs’ attorney quoting from Wig-more argued that an admission of an opponent can be used against him without calling him and that a deposition is no less an admission than any other statement of the opponent.[5] The Trial Judge then ruled that having called defendant and used his deposition in the course of that examination plaintiffs’ counsel had made an election and could not thereafter utilize the deposition for any purpose (a ruling which the majority agrees [p 644, n 3] was erroneous). He never focused on whether there would be any unfairness to defen *650 dant in permitting it to be used, perhaps because any question of possible unfairness had been removed from the case when plaintiffs’ counsel, pointing out to the court that he only sought to read from the deposition, not to recall defendant, said "The only reason I mention Dr. Nitschke is in the spirit of fair play, so that he may be here if there are any answers counsel wants him to make.” Had counsel not so forewarned his opponent, there would nevertheless be substantial question whether reading the questions and answers could be held unfair (cf. Gonzalez v Medina, 69 AD2d 14, 21-22 ["The right of the party to read the deposition transcript of an adverse party is not dependent upon the voluntary decision made by the adverse party to absent himself from the trial”]). Since he did, the absence of unfairness is clear.
Thus, the Trial Judge’s ruling was based on his erroneous view of the law as to plaintiffs’ election, rather than on his discretionary assessment of unfairness or confusion that might arise if defendant’s otherwise relevant and admissible admission was put before the jury, but if the ruling be considered nevertheless to have been discretionary, it must nonetheless be reversed as an abuse of discretion in light of the total absence from the record of any indication of unfairness or possible jury confusion.
Nor can I agree with the majority that the error was harmless. To be borne in mind is the fact that this is an action for both wrongful death and conscious pain, in which the burden of proof as to contributory negligence is on the defendant. The contention of plaintiffs was that Dr. Nitschke did not make his turn into the exit lane until he was nearly past the deceleration lane (an added lane at the extreme right-hand side of the turnpike, several hundred yards in length), which would have put defendant’s vehicle much closer to decedent at the time of defendant’s turn than did defendant’s version. Defendant’s contention was that he had entered the deceleration lane near its beginning, that decedent had started across the exit lane when defendant was close to him and had reversed course several times in front of the camper before being struck. Had defendant entered the deceleration lane when he said, decedent would have had longer warning of defendant’s intended use of the exit lane, and, therefore, greater time to evaluate his own movements, and the probability of a jury finding of contributory negligence *651 would likewise be enhanced. The fact that Dr. Nitschke had testified at his examination before trial[6] that decedent was but 20 feet away when he went directly in front of defendant, but testified at trial[7] to distances of up to 50 yards when decedent stepped onto the concrete, 25 yards when he was three quarters of the way across the concrete of the exit lane, and 5 to 15 yards when decedent began to go back and forth as defendant claimed was bound to be of greater than minor significance in the jury’s deliberations. It bore materially on whether the jury believed defendant’s claim of an early turn into the deceleration lane. It also lent some credence to defendant’s darting back and forth contention, which was much more possible to have occurred over a 75-foot or a 45-foot distance than at a 20-foot distance. Mrs. Harris, the driver of the car behind the Nitschke camper as it entered the exit lane, placed its entry quite close to the exit lane, and testified as to decedent’s movements (not all of which could she see) that he hesitated and then ran quite fast when he disappeared from her view in front of the camper. Her testimony on those points would tend to negate defendant’s contention that decedent darted back and forth. Moreover, both her markings on a photograph and defendant’s wife’s trial testimony placed decedent off the exit lane and on its left-hand shoulder at the time he was struck. In light of the foregoing, it is impossible to conclude that the jury’s verdict may not have been different than it was had the Trial Judge not erroneously excluded the questions and answers he did.
In view of my conclusion concerning the deposition point, I deem it unnecessary to discuss the expert testimony rulings.
For the foregoing reasons, I vote to reverse the order of the Appellate Division and grant a new trial.
Judges Jasen, Gabrielli and Jones concur with Chief Judge Cooke; Judge Meyer dissents and votes to reverse in a separate opinion in which Judges Wachtler and Fuchsberg concur.
Order affirmed, with costs.

. Accord: People v Wise (46 NY2d 321, 327): "In case of doubt, therefore, the balance should be struck in favor of admissibility” (cf. People v Ramistella, 306 NY 379, 384, cited by the majority).

. "He” refers to plaintiffs’ decedent.

. Even to contradict statements of defendant in a deposition of defendant read by plaintiff as part of his case in chief (Yeargans v Yeargans, 24 AD2d 280).

. "It is well settled law that in a civil action the admissions by a party of any fact material to the issue are always competent evidence against him wherever, whichever and to whomsoever made” (Nappi v Falcon Truck Renting Corp., 286 App Div 123, 126, affd 1 NY2d 750 [citing Reed v McCord, 160 NY 330, 341]; see, also, Fisch, New York Evidence [2d ed], § 791).

. He quoted from the Fourth Edition. The present version is to be found at volume 5 of Wigmore on Evidence (Chadbourne rev, § 1416, p 243).

. Taken a year and a half after the accident.

. Some four and a half years after the accident.